UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE LORD,

       Petitioner,

v.                                     Case No. 8:09-cv-969-T-33TGW

SECRETARY DEPARTMENT OF CORRECTIONS,

       Respondent.

_____/

## ORDER

This cause is before the Court on Petitioner George Lord's timely-filed 28 U.S.C. §

2254 petition for writ of habeas corpus. (Doc. 1) Respondent filed a response to the

petition. (Doc. 16). Although granted an extension of time to do so, Petitioner did not file

a reply. A review of the record demonstrates that, for the following reasons, the petition

must be **denied.**

PROCEDURAL BACKGROUND

Lord is in custody pursuant to a judgment and sentence rendered in the Sixth Judicial

Circuit in Pinellas County, Florida in Case No. CRC01-10227CFANO. On July 17, 2001,

Lord was charged by grand jury indictment with one count of First Degree Murder and one

count of Attempted First Degree Murder. (Exhibit 17: Vol. 1: R 5-7).[1] The case proceeded to jury trial before the Honorable Phillip J. Federico, Circuit Judge, on May 13, 2003. Lord was represented by retained co-counsels, Bjorn Brunvand, Esquire, and Richard Watts, Esquire. On May 15, 2003, the jury returned a verdict of guilty as charged on both counts. (Exhibit 17: Vol. 1: R 61-62). On that same date, the court sentenced Lord to life in prison on the first degree murder conviction, and to twenty-five years in prison on the attempted first degree murder count. (Exhibit 17: Vol. 1: R 63-67).

Direct Appeal

Lord pursued a direct appeal. His appointed counsel, Assistant Public Defender Tosha Cohen, filed an initial brief (Exhibit 1) raising two issues:

Issue I

WHETHER THE TRIAL COURT ERRED IN ALLOWING PREJUDICIAL HEARSAY EVIDENCE INTO THE TRIAL?

Issue II

WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO USE EVIDENCE THAT WAS NOT PROVIDED TO THE DEFENSE DURING DISCOVERY AND WHICH TENDED TO DISCOUNT APPELLANT'S ALIBI?

The State filed its answer brief. (Exhibit 2). On August 27, 2004, in Case No. 2D03-2956, the state appellate court filed a per curiam opinion affirming Lord's judgment and sentence. (Exhibit 3). *Lord v. State*, 884 So. 2d 33 (Fla. 2d DCA 2004)[table]. The court's mandate was issued on September 24, 2004. (Exhibit 4).

---

[1] Respondent filed the seven-volume record in Lord's direct appeal as Respondent's Exhibit 17. The first two volumes consist of the documentary record and are referred to as Volumes 1 and 2. Addendum volumes one to four, which contain the trial transcript, have been renumbered as Volumes 3-6. The supplemental volume contains a transcript of a pretrial hearing and is numbered Volume 7.

Rule 3.850 Motion for Postconviction Relief

On August 23, 2005, Lord filed a pro se Motion for Postconviction Relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, raising eight grounds for relief.

1. Trial counsel was ineffective for failing to move for a judgment of acquittal on the charge of attempted first degree murder;

2. Trial counsel was ineffective for failing to move for a judgment of acquittal on the charge of first degree murder;

3. Trial counsel was ineffective for failing to move to exclude the testimony of Rodney Lumpkin on the grounds that Mr. Lumpkin refused to disclose the location and ownership of a "reefer trap;"

4. Trial counsel was ineffective for failing to call Lord's aunt, Marjorie Ware, to testify at trial;

5. Trial counsel was ineffective for failing to test a gun powder residue kit taken from the Defendant's vehicle;

6. The trial court erred in informing the jury at the opening of the Defendant's trial that the Defendant would not receive the death penalty;

7. The convictions for both attempted first degree murder and first degree murder subjected Lord to double jeopardy;

8. The court erred in giving an erroneous jury instruction regarding the standard for reasonable doubt.

(Exhibit 5)

On October 6, 2005, the postconviction court issued an order summarily denying grounds one, two, three, six, seven, and eight, and directed the State to respond to grounds four and five of the motion. (Exhibit 6). The State filed its response on October 31, 2005, conceding Lord was entitled to an evidentiary hearing on grounds four and five. (Exhibit 7).

On April 18, 2007, Lord's retained counsel filed a motion for leave to amend the motion for postconviction relief, which was accompanied by the proposed amended motion. (Exhibit 8). Lord sought to add two grounds: (9) trial counsel was ineffective for failing to adequately locate and investigate the testimony of State's witness, Anthony Taylor; (10) the State withheld exculpatory evidence that Anthony Taylor had conveyed to investigators from the State Attorney's office before taking the stand at trial, that Lord was not the person Taylor had observed in the vehicle on the day of the murder. On May 3, 2007, the court issued an order denying the amended motion for postconviction relief. (Exhibit 9).

An evidentiary hearing was conducted to address grounds four and five of the original motion before the Honorable Pamela Campbell, Circuit Judge, on August 13, 2007. (Exhibit 10). Retained counsel, Corinda Luchetta, Esquire, represented Lord at the hearing. The court heard testimony from Petitioner George Lord, both trial attorneys (Bjorn Brunvand and Richard Watts), and Daniel Radcliffe, the FDLE lab technician who tested the gunshot residue kit. In an order dated August 16, 2007, the postconviction court denied the remaining two grounds of the initial Rule 3.850 motion. (Exhibit 11).

Lord appealed the denial of the claims in the original and amended Rule 3.850 motions. (Exhibit 12). Lord's appellate counsel, Corinda Luchetta, Esquire, filed an initial brief (Exhibit 13) raising three issues:

Issue I

THE TRIAL COURT'S DECISION DENYING APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE WAS ERRONEOUS; UNDER THE CIRCUMSTANCES, DEFENSE COUNSEL'S DECISION NOT TO HAVE THE GUNSHOT RESIDUE TEST ANALYZED WAS UNREASONABLE AND IT IS LIKELY THAT, HAD THE EVIDENCE BEEN ADMITTED, THE TRIAL RESULTS WOULD HAVE BEEN DIFFERENT.

Issue II

THE TRIAL COURT ERRED IN SUMMARILY DENYING APPELLANT'S CLAIM OF INEFFECTIVENESS BASED UPON COUNSEL'S FAILURE TO ARGUE FOR JUDGMENT OF ACQUITTAL ON THE CHARGE OF ATTEMPTED MURDER.

Issue III

THE TRIAL COURT'S DENIAL OF MR. LORD'S MOTION TO AMEND HIS MOTION FOR POST CONVICTION RELIEF WAS ERRONEOUS; ALTHOUGH HE TESTIFIED AT TRIAL, ANTHONY TAYLOR'S AFFIDAVIT CONTAINED NEWLY DISCOVERED EVIDENCE WHICH COULD HAVE ESTABLISHED MR. LORD'S INNOCENCE, AND THE STATE, BY WITHHOLDING THE EVIDENCE, VIOLATED THE CONSTITUTIONAL PROTECTIONS CONTAINED IN THE U.S. SUPREME COURT'S DECISION, *BRADY V. MARYLAND.*

The State filed an answer brief. (Exhibit 14). On March 25, 2009, in Case No. 2D07-4083, the Second District Court of Appeal filed a per curiam affirmance of the orders denying postconviction relief. (Exhibit 15). *Lord v. State,* 5 So. 3d 678 (Fla. 2d DCA 2008)[table]. The mandate was issued on April 20, 2009. (Exhibit 16).

THE PRESENT PETITION

Lord timely filed the present petition on May 26, 2009, raising four grounds for relief:

GROUND ONE

THE PROSECUTION WITHHELD EXCULPATORY EVIDENCE; THE EVIDENCE WAS NEWLY DISCOVERED AND THUS FELL WITHIN THE TIME LIMIT EXCEPTION TO RULE 3.850 OF THE FLORIDA RULES OF CRIMINAL PROCEDURE.

GROUND TWO

INEFFECTIVE ASSISTANCE OF COUNSEL BASED ON TRIAL COUNSEL'S FAILURE TO ADEQUATELY INVESTIGATE THE TESTIMONY OF ANTHONY TAYLOR AND TO LEARN THAT, IF ASKED, MR. TAYLOR WOULD HAVE TESTIFIED HE HAD NOT SEEN THE DEFENDANT IN THE FORD BRONCO.

## GROUND THREE

INEFFECTIVE ASSISTANCE OF COUNSEL BASED UPON THE DEFENSE ATTORNEY'S FAILURE TO HAVE THE GUN SHOT RESIDUE (GSR) TEST KIT ANALYZED.

## GROUND FOUR

INEFFECTIVE ASSISTANCE OF COUNSEL BASED UPON TRIAL COUNSEL'S FAILURE TO ADEQUATELY ARGUE THE MOTION FOR JUDGMENT OF ACQUITTAL BASED UPON INSUFFICIENT EVIDENCE OF AN ATTEMPT TO COMMIT FIRST DEGREE MURDER.

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

EXHAUSTION AND PROCEDURAL DEFAULT

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell,* 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845). This is required even if the state

Supreme Court rarely grants such petitions and usually answers only questions of broad significance. *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Lord must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady,* 456 U.S. 152,

170 (1982). Lord must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell,* 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); , 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson,* 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"The Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53

DISCUSSION

GROUNDS ONE AND TWO

In Ground One, Lord contends the State withheld exculpatory evidence that Anthony Taylor, before taking the stand at trial, had conveyed to investigators from the State Attorney's office that Lord was not the person Taylor had observed in the vehicle on the day of the murder. Lord asserts this constituted a violation of his constitutional rights pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Lord

raised this claim for the first time as ground ten in his amended motion for postconviction relief. In Ground Two, a related claim, Lord contends his trial counsel was ineffective for failing to adequately investigate the testimony of Anthony Taylor and learn that, if asked, Taylor would have testified he had not seen Lord in the Ford Bronco. This argument was also raised for the first time in ground nine of Lord's amended motion for postconviction relief. Both Grounds One and Two are procedurally barred, because they were summarily rejected by the state postconviction court as untimely pursuant to Rule 3.850's two-year time limit. The trial court denied Lord's motion to amend his motion for post conviction relief for the following reasons:

> On July 17, 2001, the Defendant was charged with one count of first degree murder and one count of attempted first degree murder. The Defendant was found guilty as charged by a jury on May 15, 2003, and sentenced on count one to life imprisonment without parole and on count two to a concurrent term of twenty-five (25) years minimum mandatory in the Department of Corrections. The Defendant filed a direct appeal of his judgment and sentence, and a mandate affirming the judgment and sentence was issued by the Second District Court of Appeal on September 24, 2004. he Defendant then timely filed a pro se Motion for Postconviction Relief on August 29, 2005. Ground s one, two, three, six, seven, and eight of that motion were previously denied by this court and an evidentiary hearing was granted on grounds four and five of the motion. The evidentiary hearing on grounds four and five is currently pending before this court.

> In his amended motion, the Defendant sets forth ten grounds for postconviction relief. With regards to grounds one through eight, these issues were included in the Defendant's original postconviction motion and, therefore, are denied as successive. See Exhibit 1: Order Denying in Part defendant's Motion for Postconviction Relief, Order to Show cause; Exhibit 2: Order Granting Evidentiary Hearing.

> With regard to grounds nine and ten, this court finds that these claims are time barred. As stated above, the mandate affirming the Defendant's judgment and sentence was issued by the Second District Court of Appeal on September 24, 2004. See Exhibit 3: Mandate and Opinion. Accordingly, the time limit for filing a claim for postconviction relief expired in this case on or

about September 25, 2006. See Florida Rule of Criminal Procedure 3.850(b). The Defendant does not allege that the claims presented in grounds nine and ten constitute newly discovered evidence or are otherwise excepted from the two-year time limit of rule 3.850(b). Accordingly, these additional claims also are denied.

(Exhibit 9: Order Denying Defendant's Amended Motion for Post Conviction Relief at pages 1-2).

The state court's ruling that grounds nine and ten of the amended postconviction motion were untimely and therefore procedurally barred was affirmed on appeal. In Florida, the standard of review for a trial court's determination regarding a motion to amend a Rule 3.850 motion is whether there was an abuse of discretion. *Huff v. State*, 762 So. 2d 476, 481 (Fla. 2000). The state courts hold, however, that there is no error in denying an amended motion if it is filed after expiration of the two-year deadline found in Fla.R.Crim.P. 3.850(b). In *Spera v. State*, 971 So. 2d 754, 759 (Fla. 2007), the Florida Supreme Court stated:

> Defendants also have another avenue, albeit one not mentioned in the rule, for amending deficient postconviction motions. We have held that a trial court abuses its discretion when it refuses to consider amendments to a motion filed before the deadline and before the trial court rules on the motion. *See Gaskin v. State,* 737 So.2d 509, 518 (Fla. 1999) (holding that the court erred in denying an amended motion filed before the trial court ruled on the original motion and before the two-year time limit expired, but finding the error harmless because the new claims were procedurally barred), receded from on other grounds by *Nelson*, 875 So.2d at 583; *see also Hyacinthe v. State*, 940 So.2d 1280, 1281 (Fla. 4th DCA 2006) ("[A] 3.850 movant has the right to amend or supplement a motion at any time within the two-year time limit as long as the trial court has not yet ruled on the merits of the motion."). Again, however, the amended motion must be filed before the deadline expires.

*Spera*, 762 So. 2d at 481.

Thus, Grounds One and Two are procedurally barred in the state court and in this Court by the two-year limitation of Rule 3.850. *See Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.) (recognizing and applying two-year bar of rule 3.850), *cert. denied*, 498 U.S. 834, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990). *See also LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1262 (11th Cir. 2005) (the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law.)

Claims that are procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)(explaining a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon,* 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324). In the instant case, Lord cannot avoid the procedural bar because he has not shown the existence of cause and prejudice. Moreover, he does not qualify for the fundamental miscarriage of justice

exception because he has no new and reliable evidence of actual innocence. *Schlup v. Delo,* 513 U.S. at 321-322.

Grounds one and two do not warrant habeas relief, as they are procedurally barred.

GROUND THREE

Lord contends trial counsel was ineffective for failing to have the gun shot residue test kit analyzed. Lord raised this argument in ground five of his motion for postconviction relief. The state court denied Lord's claim following an evidentiary hearing, stating:

> Additionally, the Defendant alleges his trial counsel was ineffective for failing to test a gun powder residue kit taken from the Defendant's vehicle. The Defendant claims that, had trial counsel had the kit tested, it would have shown there was no gun powder residue in the Defendant's vehicle, casting doubt on the State's theory that the Defendant shot the victim from inside the vehicle.

> At the hearing, the Defendant testified that he was aware that gun residue samples had been taken from his vehicle prior to trial, and he discussed testing the samples with his attorneys. The Defendant testified that trial counsel advised him that the samples would be tested, and when he learned that the samples in fact had not been tested, he directed his attorneys to test the samples. On cross-examination, the Defendant testified that he wanted the tests performed in order to show that there was no residue present in his vehicle, but conceded that subsequent testing did show trace amounts of residue were preset.

> Daniel Radcliffe, a crime lab analyst with the Florida Department of Law Enforcement, testified that the residue samples were not tested prior to the Defendant's trial because FDLE has a policy of not testing samples other than from a person's hand because they consider these tests to be of no probative value, as the residue from an object cannot be tied to any particular incident. Mr. Radcliffe indicated that four residue samples or "stubs" were sent to FDLE and were ultimately tested for postconviction purposes. The four stubs were taken from four different areas of the passenger side of the Defendant's vehicle. The tests indicated that there was a trace amount of residue found in one of the samples, but the result was considered not forensically significant, meaning that the residue could have been present as a result of contamination of the tested area. Mr. Radcliffe indicated that it would be normal to expect a significant amount of residue to be present in the area if a firearm had been

-14-

fired from a small, enclosed space such as the interior of a vehicle, but acknowledged on cross-examination that it was possible for the firearm to have been fired from the vehicle and only trace amounts of residue found. Mr. Radcliffe testified that circumstances such as how and where the firearm was positioned, whether the vehicle was moving when it was fired, whether the car had been moved with the windows down prior to testing, and other conditions could decrease the amount of residue present.

Mr. Brunvand testified that prior to trial he was aware that the residue stubs had been collected and that they were not tested. He indicated that he never asked to have the samples tested out of concern that, if the testing indicted the presence of residue, this would give the State additional evidence against the Defendant. Mr. Brunvand did concede, however, that if the tests indicated the absence of residue, this would have been both exculpatory to the Defendant and impeachment evidence against James Huey. While Mr. Brunvand could not recall discussing testing of the residue stubs with the Defendant, he testified that he would have discussed the pros and cons of testing and suggested that , unless the Defendant was one hundred percent certain that no residue would be found, they should not have the tests done. Mr. Brunvand further indicated that, if Defendant absolutely insisted, he would have asked for the stubs to be tested. On cross-examination, Mr. Brunvand indicated that his decision not to test for residue was strategic in nature and done out of the concern that the results would have indicated the presence of residue. Mr. Brunvand also noted that the trace amount ultimately found in the Defendant's vehicle would not necessarily have been helpful and it would have been much more beneficial to the defense for no residue whatsoever to have been found. Mr. Brunvand also acknowledged that, because the testing was not conducted prior to trial, the State was not able to present any evidence at trial that there was gun residue found in the Defendant's vehicle.

Based on trial counsel's testimony that he did not to [sic] test the residue stubs as a matter of trial strategy, this court must determine whether this decision, based on the totality of circumstances in this case, was a reasonable one. As stated in *Strickland*, "Judicial scrutiny of counsel's performance must be highly deferential...[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. 668,689 (citations omitted). Based upon this deferential standard, this court finds that counsel's decision was reasonable under the circumstances of this case. In hindsight, with the benefit of test results in hand, the Defendant argues that if the State's theory of the case were correct, then a large amount of residue would have had to have been found in the vehicle. Additionally, the Defendant maintains that the test results could have

impeached Mr. Huey's version of the events, further calling into question the credibility of this key witness. Although the Defendant's arguments are well taken, the fact remains that, at the pre-trial phase, trial counsel had no idea what the results of testing would show and apparently could not get adequate assurance from the Defendant that results would be negative. Rather than risk producing more incriminating evidence for the State, counsel decided to require the State to meet its burden of proof against the Defendant. Additionally, although only a trace amount of residue was found, the fact remains that some gun powder residue was located in the Defendant's vehicle. As Mr. Brunvand alluded to during his testimony, even a small amount of residue could be incriminating in the minds of jurors, so that counsel's decision not to test, even in hindsight, may have in fact been the right thing to do. Based on all of these considerations, this court finds that counsel's decision was a matter of sound trial strategy and, the Defendant has failed to sufficiently prove deficiency with regard to this claim.

Furthermore, the court finds that even had the testing been done and admitted at trial, there is no reasonable probability that the outcome would have been different. As noted by the State, because the residue stubs were not tested, the State was not able to introduce any evidence at trial that residue was found in the vehicle. Subsequent testing has revealed that there was in fact some residue present in the vehicle, albeit a very small amount. Had these test results been admitted as evidence, there is certainly no probability that the presence of a trace amount in the vehicle (versus no evidence at all on the issue) would have changed the minds of the jurors. Additionally, the State easily could have accounted for the absence of more residue, given that the Defendant's vehicle was driven for some time after the shooting, rather then being placed in a controlled environment immediately following the shooting. Based on these considerations, this court finds that the Defendant has failed to prove the prejudice prong of Strickland, and this claim is denied.

(Exhibit 11: Order Denying Defendant's Motion for Post Conviction Relief at pages 3-6 (footnotes omitted)).

For the reasons stated in its order, the state court properly found trial counsel's decision to forego gun shot residue testing constituted reasonable trial strategy. A trial attorney's strategic or tactical choices in a criminal case, after a thorough investigation of the law and facts, "are virtually unchallengeable in an ineffective assistance of counsel

claim ..." *Strickland*, 466 U.S. at 689-690. Moreover, Lord can not show that he was prejudiced by counsel's decision. Under the deferential standard set out in 28 U.S.C. § 2254 (d) and (e), Ground Three will be denied.

Ground three does not warrant habeas corpus relief.

GROUND FOUR

Lord alleges ineffective assistance of counsel based upon trial counsel's failure to adequately argue the motion for judgment of acquittal based upon insufficient evidence of an attempt to commit first degree murder.[2]  As factual support in the federal petition, Lord states:

> Defendant was charged with attempted 1st degree murder based upon events which occurred on June 16, 2001. It was alleged during the afternoon of June 16th, Mr. Lord, who was in his 40s, was attacked and robbed by three young men, one of whom was identified as the victim of the shooting on June 17th. Later in the day, after the mugging, witnesses testified a man, driving a Ford Bronco, came back to the area and fired several shots. Based on the make & model of the vehicle, several people said the shooter must have been Mr. Lord. The witnesses testified shots were fired, but did not indicate the man shot at anyone in particular. In his motion for judgment of acquittal on the charge of attempted murder, defense counsel did not argue the elements of attempted 1st degree murder, and did not argue that the state's proof failed to establish the necessary elements of the charge. In his one-sentence JOA argument on the attempt [sic] murder charge, defense counsel simply noted it was a credibility issue.

§ 2254 petition at pages 7-8. In his postconviction motion in state court, Lord stated that there was no evidence of an act, "deliberately designed, which could have killed the victim." He contends that the shot or shots fired may have been designed to scare the youths or

---

[2] In the instant petition, Lord is not challenging trial counsel's performance as to the motion for judgment of acquittal on the charge of first degree premeditated murder.

the people who did nothing to assist Lord while he was being beaten and robbed earlier. (Exhibit 5: Motion for Postconviction Relief at page 3).

A review of the trial transcript shows defense counsel made the following remarks at the time he moved for judgment of acquittal:

> THE COURT: The State having rested, what says the Defense?
>
> MR. WATTS [Defense Counsel]: I would make a perfunctory motion for judgment of -- a perfunctory motion for judgment of acquittal. It seems it's credibility rather than a sufficiency issue, and I'll leave it at that.
>
> THE COURT: All right. I think it is. I think it's clearly a credibility case. I'll deny the motion.

(Exhibit 17: Vol. 5: T 591). By implication, the trial court and defense counsel both agreed that if the State's witnesses were believed by the jury, there was sufficient evidence to survive a motion for judgment of acquittal. The issue was whether the weight of the evidence, including credibility of the witnesses, was sufficient. Such matters are within the province of the jury to determine.

This claim was raised in ground one of the original Rule 3.850 motion. As the state postconviction court properly noted in summarily denying this claim, trial counsel did move for judgment of acquittal and it was denied by the court. (Exhibit 6: Order Denying in Part Defendant's Motion for Postconviction Relief; Order to Show Cause at page 1). Counsel admitted that the issue was one of credibility and not sufficiency, and credibility of witnesses is a matter properly left to the jury.

Even if trial counsel's motion for judgment of acquittal is considered inadequate, however, Lord has failed to demonstrate that he was prejudiced. If counsel had made a more specific motion for judgment of acquittal, there is no reasonable possibility that the

outcome of the trial would have been different. The Florida appellate courts will affirm the denial of a motion for judgment of acquittal if the verdict is supported by competent, substantial evidence. *Fitzpatrick v. State*, 900 So. 2d 495, 507 (Fla. 2005). "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Id.* A trial court should not grant a judgment of acquittal " 'unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" *Id.* (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974)).

The elements of the crime of attempted first degree murder are: (1) an act intending to cause death that went beyond just thinking or talking about it; (2) a premeditated design to kill; and (3) the commission of an act which would have resulted in the death of the victim except that someone prevented the defendant from killing the victim or the defendant failed to do so. *Gordon v. State*, 780 So. 2d 17, 21 (Fla. 2001); *Holliday v. State*, 781 So. 2d 496, 498 (Fla. 5th DCA 2001).

The State's evidence against Lord was overwhelming. Several witnesses testified that on Saturday, June 16, 2001, the day before Lord killed the victim, Lord and the victim were in a fight. Lord threatened the victim and his two friends with a stick or a crowbar, and the victim punched Lord twice in the face. (Vol. 3: T 230, 276-277, 381-382). When Lord sped away from the scene in his SUV, he told the victim and his friends, "I'm going to kill you mother fuckers." (Vol. 3: T 189, 201). State witness who was sitting outside her house when the incident happened, said Lord shouted, "Well, those bitches took my mother

fucken money. Those bitches must die. They are going to die." (Vol. 3: T 232, 278, 344).

Another State witness testified that he saw Lord at a different location shortly after Lord's

altercation with the victim and other young men. Lord had bruises and cuts on his face and

he purchased a gun. (Vol. 3: T 205-206).

Later that same day, about 35-45 minutes from the time the first altercation occurred,

witnesses saw Lord return to the area with a gun and observed Lord firing the gun four

times at the victim and his two friends while Lord chased after them. (Vol. 3: T 235-237).

Lord ran after the victim, Joshua Jones. (Vol. 3: T 282). Those witnesses gave police a

physical description as well as a description of the gun and Lord's vehicle. (Vol. 3: T

251-252, 302-303). Witnesses said it was the same man who had fought with the victim

earlier. (Vol. 3: T 279, 285-287, 348, 349).

James Huey, Lord's personal friend, also testified as a State witness at trial. He said

that on Sunday, June 17, 2001, the day after Lord had shot at the victim, Lord picked Huey

up in his SUV. about ten a.m. to take Huey to Lord's house to do some work. (Vol. 4: T

406). Huey testified that instead of driving toward Lord's house, Lord "headed in the

opposite direction," toward the victim's neighborhood. (Vol. 4: T 407). Through the

passenger window of the SUV, Huey saw a young man (the victim, Joshua Jones) walking

with his head down, counting money. (Vol. 4: T 407). Lord slowed down, leaned across

Huey, and through the passenger window shot the victim with a silver handgun. (Vol. 4: T

409-410). Huey said he was in shock, and did not think the victim was hit because he ran

away. (Vol. 4: T 409). Lord then drove to his aunt's house where Huey resided. (Vol. 4: T

410). The pathology expert testified that Joshua Jones was nineteen years old and died of

a gunshot wound to the chest. (Vol. 4: T 363-364). The wound was lethal, but the victim could have moved for several minutes. (Vol. 4: T 365). Apparently, the victim ran for about 200 feet, and then collapsed and died. (Vol. 5: T 485).

Given the totality of evidence against Lord, even if trial counsel had made the argument in his motion for judgment of acquittal on the charge of attempted first degree murder, the acquittal motion would have been denied, and such ruling would have been affirmed on appeal. The state court's denial of Lord's ineffective assistance claim did not result in a decision that was contrary to, nor an unreasonable application of, the *Strickland* standard, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Ground four does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Lord' petition for writ of habeas corpus is denied.  The Clerk is directed to enter judgment against Lord and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"

*Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 16, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
George Lord